BEHAR v FOX

Docket No. 225294. Submitted November 13, 2001, at Lansing. Decided
November 30, 2001. Approved for publication January 18, 2002, at
9:25 A.M.

Ruth Behar and David Frye, for themselves and as next friends of
their eleven-year-old son, Gabriel Frye-Behar, brought an action in
the Washtenaw Circuit Court against James Fox, an assistant coach
of Frye-Behar's soccer team, and others. The plaintiffs sought dam-
ages for injury sustained by Frye-Behar while playing goalie in a
scrimmage in which Fox played on the team opposing Frye-Behar's
team. Fox had collided with Frye-Behar or kicked Frye-Behar's
knee as Frye-Behar was attempting to pick up the ball from the
goal area. The court, David S. Swartz, J., granted summary disposi-
tion for Fox. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court correctly applied a reckless misconduct stan-
dard rather than a negligence standard when determining whether
Fox can be held liable for Frye-Behar's injury. Persons who engage
in recreational activities voluntarily subject themselves to certain
risks inherent in such activities. A participant in a recreational
activity is liable for injury caused to a coparticipant only where the
injury results from the participant's reckless misconduct.

2. The trial court did not err in granting summary disposition for
Fox. The plaintiffs presented no evidence to support a finding of
reckless misconduct by Fox.

Affirmed.

ACTIONS — PERSONAL INJURY — RECREATIONAL ACTIVITIES — STANDARD OF CARE.
Coparticipants in recreational activities owe each other a duty not to
act recklessly.

*Kurt Berggren,* for the plaintiffs.

*Lanctot, McCutcheon, Schoolmaster, Taylor & Hom*
(by *Dennis M. Killeen*) (*Gross, Nemeth & Silverman,
P.L.C.,* by *Mary T. Nemeth,* of Counsel), for the
defendant.

.

Before: O'CONNELL, P.J., and SAWYER and SMOLENSKI, JJ.

PER CURIAM. Plaintiffs Ruth Behar and David Frye, individually and as next friends of their eleven-year-old minor son, Gabriel Frye-Behar, appeal as of right from the trial court order that granted defendants summary disposition pursuant to MCR 2.116(C)(10). Plaintiffs had filed a tort action against defendants alleging that defendant James Fox, an assistant coach, was liable for using his full effort in a soccer scrimmage against their son, and further alleging that defendant Steve Rubin, the head coach, was negligent for failing to properly supervise the scrimmage and for allowing defendant Fox to play at his full potential.[1] We affirm.

Plaintiffs brought suit after their son tore his anterior cruciate ligament when defendant Fox either collided with or kicked the boy in the knee during a soccer scrimmage. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiffs failed, as a matter of undisputed fact and law, to establish that defendant Fox' conduct was reckless. Plaintiffs argued that the standard to be applied was negligence rather than recklessness and further argued that they did present sufficient material facts to create an issue regarding defendant Fox' negligent and reckless misconduct. The trial court agreed with defendants and granted summary disposition on that basis.

We review a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331,

---

[1] Although originally a party to this appeal, defendant Rubin was dismissed as a party by stipulation during the pendency of this appeal.

337; 572 NW2d 201 (1998). Summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999); MCR 2.116(C)(10).

I

Plaintiffs first argue that the trial court erred in granting summary disposition because it applied the reckless misconduct standard instead of the less burdensome negligence standard. We disagree.

The trial court correctly concluded that the reckless misconduct standard adopted in *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999), applies to this case. In *Ritchie-Gamester*, the adult plaintiff sued the twelve-year-old defendant for carelessly skating backward on an ice-skating rink, causing the two to collide, and further resulting in the plaintiff's injuring her knee from her fall on the ice rink. *Id.*, 75. Our Supreme Court reviewed the published cases in Michigan involving injuries to participants in recreational activities and concluded that "there seems to be general agreement that participants in recreational activities are not liable for every mishap that results in injury, and that certain risks inhere in all such activities." *Id.*, 81.

Next, our Supreme Court looked at the law in other jurisdictions and noted that the majority of other jurisdictions have adopted a "reckless or intentional conduct" standard. *Id.*, 82. Our Supreme Court went on to note that, no matter whether the legal effect of participating in a recreational activity is classified as "consent to inherent risks," "notice," "an implied con-

tract," or "assuming the risks," the bottom line is that people who engage in recreational activities voluntarily "subject themselves to certain risks inherent in that activity." *Id.*, 86-87. Thus, our Supreme Court concluded:

> With these realities in mind, we join the majority of jurisdictions and adopt reckless misconduct as the minimum standard of care for coparticipants in recreational activities. We believe that this standard most accurately reflects the actual expectations of participants in recreational activities. As will be discussed in more detail below, we believe that participants in recreational activities do not expect to sue or be sued for mere carelessness. A recklessness standard also encourages vigorous participation in recreational activities, while still providing protection from egregious conduct. Finally, this standard lends itself to common-sense application by both judges and juries. [*Id.*, 89.]

While plaintiffs do not quarrel with the holding in *Ritchie-Gamester*, they contend that the standard in *Ritchie-Gamester* is not absolute but leaves room for other standards depending on the factual circumstances of each case. In support of this contention, plaintiffs quote footnote 9 of the *Ritchie-Gamester* opinion. That footnote provides as follows:

> We recognize that we have stated this standard broadly as applying to all "recreational activities." However, the precise scope of this rule is best established by allowing it to emerge on a case-by-case basis, so that we might carefully consider the application of the recklessness standard in various factual contexts. [*Id.*, 89, n 9.]

Plaintiffs contend that we should carve out an exception to the *Ritchie-Gamester* standard where an adult coach uses his "full effort" to play soccer against an eleven-year-old. However, nothing in the

above footnote invites exceptions for disparities in height, weight, age, or skill level. On the contrary, our Supreme Court thought about those disparities in rendering its opinion and concluded that, at least in the context of an "open skate," the risks of skating include the reality that people "of various ages and abilities" will pile onto the ice in proximity to each other. *Id.*, 89.

Similarly, the risk of injury from a collision or kick is present whenever an individual plays soccer. Although interaction with others varying in size, age, and ability can result in serious injuries, the risk that an individual will be knocked down or kicked in an unprotected area by someone older, stronger, or less experienced is an inherent risk of the game. Thus, the mere fact that plaintiffs' minor son was injured in a collision with an adult coach rather than with a larger child coparticipant is of insufficient distinction to take this case out of the realm of the *Ritchie-Gamester* standard.

Further, the deposition testimony indicates that defendant Fox was as much a "coparticipant" in the scrimmage as he was a coach. Rubin testified during deposition that both he and Fox were involved in the scrimmage on the team opposing that of plaintiffs' son. Accordingly, we hold that the trial court correctly applied the recklessness standard adopted in *Ritchie-Gamester.*

II

Plaintiffs next argue that the trial court erred in granting defendants summary disposition because a question of material fact existed regarding whether defendant Fox' conduct was reckless. We disagree.

Our Supreme Court has previously defined reckless misconduct as follows:

> "One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who ·casts it where he has reason to believe it will strike another, being indifferent whether it does so or not." [*Gibbard v Cursan*, 225 Mich 311, 321; 196 NW 398 (1923), quoting *Atchison, T & SF R Co v Baker*, 79 Kan 183, 189-190, 98 P 804 (1908).]

Here, plaintiffs presented no documentary evidence in support of their contention that defendant Fox' conduct was reckless. During his deposition, Frye-Behar testified that the ball was kicked toward his goal and that he raced toward it. He further testified that as he slowed down to pick up the ball from the goal area, defendant Fox, who was just one stride behind him, hit the back of Frye-Behar's knee, knocking him down. Frye-Behar admitted that there have probably been instances where he has tried to get the ball and missed, making contact with another player, instead of the ball. He also averred that, while he had never seen a player kick a goalie in the goalie box before his injury, it is not unusual for soccer players to get kicked during the course of the game.

In his affidavit, Frye-Behar further averred that, while he did not actually see the blow to his knee, he felt defendant Fox' toe and cleats strike him hard, and that the bruising was deep and severe and stayed with him for a very long time. Frye-Behar further

averred that, when he was kicked, defendant Fox had "no chance to make a play on the ball."

Frye-Behar's sworn statements reveal that, at most, defendant Fox was pursuing Frye-Behar in an effort to win the ball, but negligently kicked Frye-Behar's knee instead. The evidence does not suggest that defendant Fox' conduct displayed such complete indifference toward the risk of injury as to place defendant Fox in the same class as an intentional tortfeasor.

Although plaintiffs point out that, under standard soccer regulations, kicking a goalie's knee in the goal area amounts to a "red card" violation, the trial court correctly dismissed this argument. As the trial court itself recognized, our Supreme Court in *Ritchie-Gamester* expressly refused to adopt the concurrence's position that breaches of rules regarding safety should be actionable. *Ritchie-Gamester, supra,* 92.

Instead, our Supreme Court concluded that such a position would result in confusion, and would lead to "more, rather than fewer, ancillary disputes." *Id.* As the Court explained:

> In the case of soccer, which is officially a "non-contact" sport, where would the concurrence draw the "negligence line" if a participant is injured when she is fouled? Is a minor foul actionable? Is a foul that draws a "yellow card" actionable? Or would the concurrence find the foul actionable if it results in a "red card"? . . .

> Surely all who participate in recreational activities do so with the hope that they will not be injured by the clumsiness or over-exuberant play of their coparticipants. However, we suspect that reasonable participants recognize that skill levels and play styles vary, and that an occasional injury is a foreseeable and natural part of being involved in

recreational activities, however the "informal and formal rules" are structured and enforced. [*Id.*, 93-94.]

Thus, plaintiffs' argument that, had defendant Fox engaged in such conduct during the course of an organized game, he would have received a "red card," does not indicate that defendant Fox' conduct was reckless. In addition, because plaintiffs failed to establish that defendant Fox' negligent conduct amounted to anything more than "clumsy" and "over-exuberant play," their argument that the trial court erroneously granted defendants summary disposition lacks merit.

Affirmed.